# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OLGA DEMYANENKO-TODD,
KIMBERLY FORCE, and MELISSA
MILLER, Individually and on Behalf of
All Others Similarly Situated,

　　　　　　　Plaintiffs,

　　v.

NAVIENT CORPORATION,
NAVIENT SOLUTIONS, INC., and
NAVIENT SOLUTIONS, LLC,

　　　　　　　Defendants.

No. 3:17-cv-00772

(Hon. Robert D. Mariani)

Electronically Filed

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

Joseph H. Meltzer
Geoffrey C. Jarvis
Zachary Arbitman
**Kessler Topaz Meltzer**
**& Check, LLP**
280 King of Prussia Road
Radnor, PA  19087

Robert D. Schaub
**Rosenn Jenkins &**
**Greenwald, LLP**
15 South Franklin St.
Wilkes-Barre, PA 18711

*Counsel for Plaintiffs*
*and the Classes*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    Student Loan Programs And Servicing Arrangements ........................2

    B.    The Formation Of Navient Corporation ...............................................3

    C.    Defendants Improperly Steered Borrowers Into Forbearance Rather Than More Advantageous IDR Options ...................................4

III.   ARGUMENT .........................................................................................6

    A.    Plaintiffs Have Enforceable Contract Claims ......................................6

        1.    Defendants Can Be Held Liable For Breaches Of The MPN Because They Were Agents Of ED ...........................6

        2.    Defendants Breached The Terms Of The MPN And The Duty Of Good Faith And Fair Dealing ......................................8

    B.    Plaintiffs' Consumer Protection Claims Are Not Expressly Preempted By The HEA ......................................................................10

    C.    Plaintiffs Have Enforceable Consumer Protection Claims .................14

        1.    The FAC Adequately Alleges Claims Under The DCFA ........14

        2.    The FAC Adequately Alleges Claims Under The NYGBL .....17

        3.    The FAC Adequately Alleges Claims Under The CLRA And UCL .................................................................................20

            (i)    The FAC Properly Pleads A CLRA Claim ....................20

            (ii)   The FAC Properly Pleads A UCL Claim .......................22

        4.    The FAC Adequately Alleges Claims Under The FDUTPA ...24

    D.    ED Is Not Necessary Or Indispensable To This Lawsuit ...................26

    E.    Navient Corporation Is A Proper Defendant .......................................29

IV.   CONCLUSION ...................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anchorage v. Integrated Concepts & Research Corp.*,
  1 F. Supp. 3d 1001 (D. Alaska 2014) ...............................................................27

*Anderson v. SeaWorld Parks & Entm't, Inc.*,
  No. 15-cv-2172, 2016 WL 8929295 (N.D. Cal. Nov. 7, 2016).........................21

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016)...............................................................24

*Bank of America, N.A. v. Zaskey*,
  No. 15-cv-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016) .......................26

*Bruesewitz v. Wyeth Inc.*,
  561 F.3d 233 (3d Cir. 2009), *aff'd*, 562 U.S. 223 (2011)..................................11

*Chae v. SLM Corp.*,
  593 F.3d 936 (9th Cir. 2010) ...........................................................10, 12, 13, 14

*Chamber of Commerce of U.S. v. Whiting*,
  563 U.S. 582 (2011)...........................................................................................11

*In re Covenant Partners, L.P.*,
  531 B.R. 84 (Bankr. E.D. Pa. 2015) ..................................................................28

*In re Craftmatic Sec. Litig. v. Kraftsow*,
  890 F.2d 628 (3d Cir. 1989) ..............................................................................30

*Evans v. Linden Research, Inc.*,
  763 F. Supp. 2d 735 (E.D. Pa. 2011).................................................................22

*Fairbanks v. Superior Court*,
  205 P.3d 201 (Cal. 2009)..............................................................................20, 21

*Florida Lime & Avocado Growers, Inc. v. Paul*,
  373 U.S. 132 (1963)...........................................................................................12

*Genna v. Sallie Mae, Inc.*,
  No. 11-cv-7371, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012).............13, 14, 19

*Gerbitz v. ING Bank, FSB*,
  967 F. Supp. 2d 1072 (D. Del. 2013)............................................................16, 17

*Greene v. Gerber Prods. Co.*,
  No. 16-cv-1153, 2017 WL 3327583 (E.D.N.Y. Aug. 2, 2017)..........................18

*Harnish v. Widener Univ. Sch. of Law*,
  931 F. Supp. 2d 641 (D.N.J. 2013)...................................................................15

*Harte v. Ocwen Fin. Corp.*,
  No. 13-cv-5410, 2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014).........................6

*Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013)...............................................................23

*Indianapolis Life Ins. Co. v. Hentz*,
  No. 06-cv-2152, 2008 WL 4453223 (M.D. Pa. Sept. 30, 2008) ........................17

*Kanfer v. Pharmacare US, Inc.*,
  142 F. Supp. 3d 1091 (S.D. Cal. 2015)..............................................................22

*Kerr v. American Independent Ins. Co.*,
  C.A. No. 06C-06-012, 2007 WL 642072 (Del. Super. Ct. Feb. 28,
  2007) .................................................................................................................16

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (Cal. Ct. App. 2012)...............................................22, 23

*Landstar Express Am., Inc. v. Fed. Mar. Comm'n*,
  569 F.3d 493 (D.C. Cir. 2009).............................................................................7

*Leather's Best, Inc. v. S.S. Mormaclynx*,
  451 F.2d 800 (2d Cir. 1971) ...............................................................................7

*M/A–COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990) ................................................................................9

*Martorella v. Deutsche Bank Nat'l Tr. Co.*,
  161 F. Supp. 3d 1209 (S.D. Fla. 2015) *adhered to on
  reconsideration*, No. 12-cv-80372, 2015 WL 10857441 (S.D. Fla.
  Nov. 9, 2015) ...............................................................................................25, 26

*Mazonas v. Nationstar Mortg. LLC*,
  No. 16-cv-660, 2016 WL 2344196 (N.D. Cal. May 4, 2016) ...........................21

*McCulloch v. PNC Bank Inc.*,
  298 F.3d 1217 (11th Cir. 2002) ..........................................................14

*Morgan v. AT&T Wireless Services, Inc.*,
  99 Cal. Rptr. 3d 768 (Cal. Ct. App. 2009).....................................23, 24

*Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N.
  Am., Inc.*,
  558 A.2d 1066 (Del. Super. Ct. 1989) ..............................................16

*O'Hagan v. Del Prado*,
  53 N.Y.S.2d 843 (Sup. Ct. 1945)..........................................................7

*Parola v. Citibank (South Dakota) N.A.*,
  894 F. Supp. 2d 188 (D. Conn. 2012)....................................................9

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001) .................................................................31

*Pelman v. McDonald's Corp.*,
  237 F. Supp. 2d 512 (S.D.N.Y. 2003) ...............................................18

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) .........................................................18, 19

*Peregrine Myanmar Ltd. v. Segal*,
  89 F.3d 41 (2d Cir. 1996) ...................................................................26

*Perez v. Monster Inc.*,
  149 F. Supp. 3d 1176 (N.D. Cal. 2016)..............................................21

*Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*,
  842 F.2d 1466 (3d Cir. 1988) ............................................................30

*Plumlee v. Pfizer, Inc.*,
  No. 13-cv-0414, 2014 WL 4275519 (N.D. Cal. Aug. 29, 2014).......................23

*Pom Wonderful LLC v. Welch Foods, Inc.*,
  No. 09-cv-567, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) ..........................24

*Precision Pine & Timber, Inc. v. United States*,
    596 F.3d 817 (Fed. Cir. 2010) .......................................................................10

*Russ v. Apollo Grp., Inc.*,
    No. 09-cv-904, 2009 WL 10674112 (C.D. Cal. Sept. 23, 2009).......................20

*Sammons v. Hartford Underwriters Ins. Co.*,
    C.A. No. S09C-12-026, 2010 WL 1267222 (Del. Super. Ct. Apr. 1,
    2010) ..............................................................................................................16

*Schwartz v. Lights of Am.*,
    No. 11-cv-1712, 2012 WL 4497398 (C.D. Cal. Aug. 31, 2012).......................17

*Seguros Banvenez, S.A. v. S/S Oliver Drescher*,
    761 F.2d 855 (2d Cir. 1985) .............................................................................7

*Seville Indus. Mach. Corp. v. Southmost Mach Corp.*,
    742 F.2d 786 (3d Cir. 1984) ............................................................................16

*Stephenson v. Capano*,
    462 A.2d 1069 (Del. 1983) ..............................................................................16

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (N.Y. Ct. App. 2000)...............................................................19

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*,
    C.A. No. 16-581, 2017 WL 896988 (D. Del. Mar. 7, 2017) ............................30

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006) .............................................................................9

*Trent v. Mortg. Elec. Registration Sys., Inc.*,
    618 F. Supp. 2d 1356 (M.D. Fla. 2007)............................................................26

*United States v. Gorski*,
    No. 11-cv-4252, 2012 WL 12886823 (C.D. Cal. Mar. 22, 2012) .....................14

*United States v. Payment Processing Ctr., LLC*,
    No. 06-cv-0725, 2006 WL 2990392 (E.D. Pa. Oct. 18, 2006)..........................27

*Worldspan, L.P. v. Ultimate Living Grp., LLC*,
    390 F. Supp. 2d 412 (D. Del. 2005)..................................................................15

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ......................................................................................11

*Yarger v. ING Bank, FSB*,
   285 F.R.D. 308 (D. Del. 2012) ....................................................................15

*Zeno v. Ford Motor Co.*,
   238 F.R.D. 173 (W.D. Pa. 2006) ...............................................................6, 7

**Statutes and Rules**

6 Del. C. § 2511(6) ............................................................................................14

6 Del. C. § 2525 ................................................................................................17

20 U.S.C. § 1098g .............................................................................................11

20 U.S.C. § 1098 ................................................................................................2

25 Fed. Proc., L. Ed. § 59:131 ........................................................................27

28 U.S.C. § 1332 ...............................................................................................17

Cal. Bus. & Prof. Code § 17200 .....................................................................22

Cal. Civ. Code § 1760 ......................................................................................20

Cal. Civ. Code § 1761(b) .................................................................................20

Cal. Civ. Code § 1770(a)(7) ............................................................................21

Cal. Civ. Code § 1780(d) .................................................................................22

Cal. Civ. Code § 1782(a) .................................................................................22

Delaware Deceptive Trade Practices Act .......................................................15

Fed. R. Civ. P. 8 ...............................................................................................16

Fed. R. Civ. P. 8(a) ..........................................................................................18

Fed. R. Civ. P. 9(b) ............................................................................16, 17, 18

Fed. R. Civ. P. 19 .............................................................................................28

FED. R. CIV. P. 19(a)(1)(B) ....................................................................26

FED. R. CIV. P. 19(b) .............................................................................28

Fla. Stat. § 501.203(8).............................................................................25

NYGBL § 349 ................................................................17, 18, 19, 20

NYGBL § 349(d) ....................................................................................18

## Other Authorities

RESTATEMENT (SECOND) OF CONTRACTS § 205 (Am. Law Inst. 1981).....................9

## DEFINED TERMS

| | |
|---|---|
| CFPB | United States Consumer Finance Protection Bureau |
| CFPB Action | *CFPB v. Navient Corp.*, No. 3:17-cv-00101-RDM (M.D. Pa.) |
| Defendants | Navient Corporation, Navient Solutions, Inc. and Navient Solutions LLC |
| ED | United States Department of Education |
| FAC | First Amended Complaint (ECF No. 26) |
| FFELP | Federal Family Education Loan Program |
| HEA | Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070, *et seq.* |
| IDR | Income Driven Repayment Plan |
| Illinois Action | *Illinois ex rel. Madigan v. Navient Corp.*, No. 17 CH 00761 (Ill. Cir. Ct., Cook Co.) |
| MPN | Master Promissory Note |
| MTD | Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 28) |
| Navient Corp. | Navient Corporation |
| NSI | Navient Solutions, Inc. |
| NSL | Navient Solutions, LLC |
| Plaintiffs | Olga Demyanenko-Todd, Kimberly Force, and Melissa Miller |
| SEC | Securities and Exchange Commission |
| Servicing Contract | Agreement between ED and SLM Corp. (predecessor to Navient Corp.) in 2009, and renewed subsequently. |
| Washington Action | *Washington ex rel. Ferguson v. Navient Corp.*, No. 17-2-01115-1 SEA (Wash. Super. Ct., King Co.) |

## I.    INTRODUCTION

This class action seeks compensation for Defendants' improper steering of millions of federal student loan borrowers into costly forbearances without making them aware, as Defendants promised to, of the availability of more affordable income-based repayment plans.  Plaintiffs[1] bring claims against Defendants for their breach of MPNs (student loan agreements) entered into between borrowers, such as Plaintiffs, and ED—for whom Defendants acted as agent.  Plaintiffs also bring claims under certain state consumer protection statues (California, Delaware, Florida, and New York), and seek recompense for billions of dollars lost by borrowers between January 1, 2010, and the present, as a result of Defendants' deceptive practices.

In response to the FAC,[2] Defendants submit the MTD in an effort to dismiss Plaintiffs' claims in their entirety.  With respect to Plaintiffs' contract claims, Defendants assert that they cannot be held responsible for their misconduct because they are not signatories to the MPNs and, also, because Plaintiffs do not point to a specific promise that Defendants failed to fulfill.  To the contrary, Plaintiffs allege that Defendants abrogated their contractual rights by affirmatively steering them into costly forbearances, instead of providing them with the freedom to choose repayment plans more appropriate for their financial situations.

---

[1] All defined terms are set forth in "Defined Terms," page viii.

[2] FAC cited herein as "¶".

Moreover, Defendants cannot avoid liability for this wrongdoing by simply claiming non-signatory status since their role as agents for ED provides an exception to the general requirement of privity.

Regarding Plaintiffs' consumer protection claims, Defendants primarily argue that those causes of action are expressly preempted by the HEA and that the statutes cited by Plaintiffs do not apply to loan servicers.  But, Defendants' attempt to shoehorn Plaintiffs' improper steering claims into HEA Section 1098g's express preemption of non-federal "disclosure requirements" does not comport with a plain reading of that provision's text.  Further, and as described in greater detail below, each of the state-specific statutes relied on by Plaintiffs—in line with their broad remedial purposes—apply to Defendants as "loan servicers."  Finally, their claims that ED is a necessary party, and the Navient Corp. and NSI are improper parties, are wholly without basis.

## II.    BACKGROUND

### A.    Student Loan Programs And Servicing Arrangements

Plaintiffs took out federal student loans funded or guaranteed by the federal government to finance their (or family members') college educations.  ¶¶20-21, 27-27, 35, 53.  Federal student loans are beneficial for students since they are primarily need-based, have a capped interest rate, and come with helpful repayment options, including those keyed to a borrower's income.  ¶56.

Federal student loans are governed by a contract between the borrower and ED known as an MPN.  ¶¶21-22.  The MPN is a form agreement that is identical for each of the three named plaintiffs herein, as well as for the members of the classes.  *See* ECF Nos. 26-1 and 26-2.  MPNs set forth the terms of student loans, such as repayment period, interest rates, and payment amounts.  *Id.*; *see* ¶¶61-62.

Once a student's loan goes into repayment (because the student has graduated or dropped out), the loan is assigned to a servicing company to interface with the borrower regarding the repayment of the loan.  While a number of servicing companies have servicing agreements with the ED, historically the largest was Sallie Mae—formally known as SLM Corporation.  ¶¶37-38.  ED awarded SLM Corp. a Servicing Contract in 2009, and that contract, subject to certain modifications, remains in force today.  ¶¶65-66.

## B.    The Formation Of Navient Corporation

Navient Corp. was formed in 2014, when the former SLM Corp. was split into separate loan origination and loan servicing corporations.  ¶¶39-41.  Pursuant to the terms of the split, Navient Corp. assumed responsibility for liabilities resulting from the pre-reorganization conduct of old SLM Corp. and its subsidiaries related to servicing student loans, and thus is responsible for student loan servicing misconduct occurring prior to 2014.  *Id.*  Further, Navient Corp., as the successor to SLM Corp., is responsible for the student loan servicing

obligations under the Servicing Contract.  *Id.*  NSI is a wholly-owned subsidiary of Navient Corp.  ¶43.  NSI formerly was Sallie Mae Inc., and changed its name, effective January 31, 2017, to NSL.  ¶¶42-45.  NSI/NSL are the entities utilized by Navient Corp. to fulfill its student loan servicing obligations for ED.  *Id.*

Since their founding, there has been significant overlap between the governance and management of Navient Corp. and NSI/NSL:

- Many of the directors and officers of NSI/NSL have also served as directors or officers of Navient Corp., ¶46;

- Navient Corp. owns or leases the offices and controls and directs the hiring of employees for NSI/NSL, ¶50;

- Navient Corp.'s SEC filings repeatedly hold out "Navient" (not specifically NSI/NSL) as the "leading loan management, servicing … company," ¶48;

- Navient Corp. often makes no meaningful distinction between it and its subsidiaries.  ¶47.

### C. Defendants Improperly Steered Borrowers Into Forbearance Rather Than More Advantageous IDR Options

Plaintiffs allege that Defendants failed to inform struggling borrowers about the availability of more affordable IDR plans, and instead improperly steered such borrowers into costly forbearance.  ¶¶70-100.  For borrowers experiencing long-term financial hardship, enrollment in an IDR plan would have been significantly more advantageous than forbearance.  ¶¶79-101.  Among other benefits, IDR plans reduce borrowers' monthly payments based on their income and family size and, in some circumstances, may allow them to receive interest subsidies or loan

forgiveness. *Id.* By contrast, forbearance is typically unsuitable for borrowers whose financial hardship is not temporary because their loans continue to accumulate unpaid interest, which is added to the loan's principal balance during the period of forbearance. ¶¶74-78. Moreover, in some cases, a loan may be re-amortized following forbearance, which could lead to an increase in the borrower's monthly payment amount. *Id.*

Such steering benefitted Defendants by reducing costs associated with servicing loans such as staff resources. ¶¶79-101. In particular, to reduce costs and increase profits, Defendants adopted compensation policies that paid their customer service representatives, in part, based on average call time with borrowers. ¶¶86-88. Given that enrolling borrowers in IDR plans is more time-consuming than enrolling them in forbearance, Defendants' customer representatives were incentivized to push borrowers into forbearance without adequately discussing IDR alternatives. ¶¶89-98. As a result, numerous borrowers suffered significant damages associated with, among other things, the addition of unpaid, accrued interest in principal balances of their loans; the loss of an interest subsidy from the federal government; and delayed progress towards loan forgiveness. ¶¶98-101.

## III.   ARGUMENT

### A.   Plaintiffs Have Enforceable Contract Claims

#### 1.   Defendants Can Be Held Liable For Breaches Of The MPN Because They Were Agents Of ED

Defendants claim that, because they are not signatories to the MPNs between Plaintiffs and ED, they cannot be held liable for breach of those agreements.   MTD 7-8.   While there is no dispute that Defendants are not signatories to the MPN, that fact is not relevant since "an agency relationship can establish an exception to the general requirement of privity."   *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 192-93 (W.D. Pa. 2006);[3] *see also Harte v. Ocwen Fin. Corp.*, No. 13-cv-5410, 2014 WL 4677120, at *6 (E.D.N.Y. Sept. 19, 2014) ("OLS can be held liable for breach of contract based on a relationship with Plaintiff constituting the functional equivalent of privity.").[4]   In *Harte*, the court found that a mortgage loan servicer potentially could be held liable, even though not a party to the loan agreement, for improperly servicing the loan.   *See Harte*, 2014 WL

---

[3] Unless otherwise indicated, all citations and internal quotations are omitted and all emphases are added.

[4] While Defendants have asserted that, under the choice-of-law clause in the MPN, federal law must be applied to address the contract claims, the MPN also specifically provides that "[a]pplicable state law, except as preempted by federal law, may provide for certain borrower rights remedies and defenses in addition to those stated in this MPN."   ECF Nos. 26-1 (at 3) and 26-2 (at 3) (MPN "Governing Law" provision).

4677120, at *6 (claim dismissed without prejudice to permit plaintiff to replead facts to establish legal theory).[5]

For the purposes of establishing agency-based privity, the basic elements are "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Zeno*, 238 F.R.D. at 193. Each of these elements is met here. First, the Servicing Contract specifically identifies ED as the controlling party and manifests that the servicing obligations under MPNs assigned to it will be undertaken by Defendants. ¶¶65-69; *see* ECF No. 26-3. Second, Defendants have accepted the undertaking, agreeing in the Servicing Contract to service Plaintiffs' loans. ¶69.

---

[5] Defendants rely (MTD 8) upon three cases that all deal with maritime issues—wholly different from the subject matter herein. *Landstar Express Am., Inc. v. Fed. Mar. Comm'n*, 569 F.3d 493, 497 (D.C. Cir. 2009); *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2d Cir. 1985); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir. 1971). Further, all are inapposite. *Landstar* is wholly inapplicable because it is not a contract case, but instead addresses a regulatory issue regarding the jurisdiction of the Federal Maritime Commission. *Leather's Best* is nearly 50 years old and relies on Mississippi and New York law (including a case decided more than 70 years ago), rather than the more recent New York case—2 years old—cited by Plaintiffs. *Leather's Best*, 451 F.2d at 808 (citing *O'Hagan v. Del Prado*, 53 N.Y.S.2d 843 (Sup. Ct. 1945)). Finally, *Seguros* dealt with a situation where an agent made a contract for the principal and the issue was whether it was liable for a contract it made on behalf of another. *Seguros*, 761 F.2d at 860. Here, the issue is the responsibility of the agent when it has assumed duties under a contract clearly made by the principal.

Third, ED has specifically delineated the obligations imposed upon servicers such as Defendants, stating on its website that "[t]he loan servicer will work with you on repayment plans and loan consolidation and will assist you with other tasks related to your federal student loan." ¶80. Defendants have acknowledged their acceptance of these obligations, stating on their website: "if you're having trouble, there are options for assistance, including income-driven repayment plans, deferment, forbearance, and solutions to help you avoid delinquency and prevent default . . . . We can work with you to help you get back on track . . . ." ¶81. *See also* ¶¶82-84. Given the obligations imposed on Defendants to service student loans, and their clear acceptance of those obligations, the facts of this case clearly establish that Defendants are a responsible party under the MPN as an agent of ED.

## 2. Defendants Breached The Terms Of The MPN And The Duty Of Good Faith And Fair Dealing

Defendants also contend that Plaintiffs have not alleged a breach of any specific provision of the MPN since, they claim, nothing in the MPN requires that specific repayment options be discussed with a borrower. MTD 8-9. They further argue that because no term in the MPN was breached, there is no breach of the duty of good faith and fair dealing. MTD 9-10. They are wrong.

The MPN between ED and Plaintiffs specifically identified five options, including the "Income Contingent Repayment Plan" and "Income-Based Repayment Plan (effective July 1, 2009)," as plans available to borrowers, and

affirmatively provides that borrowers may choose among repayment plans.   ¶23. The MPN also allows for repayment plans tailored to each borrower, ¶24, or forbearance (where payment is suspended for a period, but interest continues to accrue).   ¶76.

Defendants abrogated the borrowers' rights to choose among repayment plans by affirmatively steering Plaintiffs into plans that were most advantageous to Defendants (by reducing their operating costs), rather than advising Plaintiffs regarding the plans best for them as provided in the MPN.   Defendants thus breached the explicit requirements of the MPN.[6]

Defendants also breached the duty of good faith and fair dealing that is implied into every contract.[7]   The duty requires that "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."   *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006).   In this case, as explained above, the MPN clearly provides to borrowers the ability to choose a repayment option.   That

---

[6] Defendants' reliance on *Parola v. Citibank (South Dakota) N.A.*, 894 F. Supp. 2d 188 (D. Conn. 2012), is not to the contrary.   In *Parola*, the plaintiff merely alleged that she was not provided with information that she did not even request—not that, as here, she was affirmatively steered into a program to benefit the defendant. Thus, *Parola* is wholly irrelevant to the instant dispute.

[7] *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (Am. Law Inst. 1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

ability was thwarted by Defendants, who, acting in their own self-interest, steered borrowers toward forbearance rather than one of the specifically enumerated repayment options. ¶23. That precluded borrowers from receiving the "fruits" of their bargain—the repayment alternatives permitted under the MPN—and thus breached the duty of good faith and fair dealing.[8]

## B.   Plaintiffs' Consumer Protection Claims Are Not Expressly Preempted By The HEA

Defendants, relying on the decision of the Ninth Circuit in *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), argue that Plaintiffs' consumer claims are preempted by the HEA because they essentially are disclosure claims. MTD 10-13. Defendants, however, raised these exact preemption arguments regarding consumer claims in the Washington Action,[9] and that court rejected them wholesale.[10] This Court should do the same since those arguments are equally flawed here.

---

[8] Defendants' reliance on *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 830 (Fed. Cir. 2010), MTD 10, is misplaced since there is no attempt here to expand the contractual duties imposed upon Defendants. On the contrary, it is the Defendants who have precluded Plaintiffs from obtaining the benefits provided to them in the MPN.

[9] Exhibit A, true and correct copies of the motion to dismiss briefs submitted in the Washington Action.

[10] Exhibit B, a true and correct copy of the Order Denying Defendants' Motion to Dismiss the Complaint in the Washington Action.

Express preemption occurs only when a federal law "contains language so requiring." *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 239 (3d Cir. 2009), *aff'd*, 562 U.S. 223 (2011). Here, Defendants seek to extend the preemption of "***disclosure requirements***" set forth in Section 1098g of the HEA, 20 U.S.C. § 1098g, to the affirmative steering misconduct at issue by misconstruing the nature of the claims in the FAC. That simply is not proper.

Two core principles guide courts' analysis in determining the breadth of preemption. **First**, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "When a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011). **Second**, courts must assume "that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565. Here, both of these key principles preclude preemption.

In Section 1098g, Congress deliberately circumscribed its preemption to state laws concerning "***disclosure requirements***" relating to student loans. *See* 20 U.S.C. § 1098g. If Congress intended a sweeping displacement of traditional state laws prohibiting affirmative deception, it would have said so explicitly—rather

than using the term "disclosure," as Defendants claim, to *implicitly* encompass affirmative deception. There is nothing inconsistent about the federal government controlling mandated disclosures, while simultaneously requiring servicers to comply with state consumer protection statutes prohibiting more general misconduct.

To this point, the gravamen of Plaintiffs' claims is not that Defendants failed to provide specific disclosures mandated by state law, but rather that Defendants, in order to serve their own economic goals, steered borrowers away from repayment plans that would be advantageous to them because such steering benefitted Defendants. ¶¶79-101. Instead of working with borrowers to "help [them] make the right decision for [their] situation," Defendants incentivized their employees to simply push borrowers into costly forbearances. ¶¶79-91, 98. This is not a disclosure claim of the type preempted by the HEA. Further, because consumer protection is a field traditionally regulated by the states, the "presumption against preemption" for "police powers" applies here. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146, 150 (1963) (holding that laws "designed to prevent the deception of consumers" lie "well within the scope of [state] police powers").

The *Chae* decision principally relied upon by Defendants is not to the contrary. In *Chae*, plaintiffs brought several state-law claims, some of which

challenged the adequacy of Sallie Mae's HEA-required disclosures, and some of which focused on more general deceptive practices.   *Chae*, 593 F.3d 936. Unsurprisingly, the *Chae* Court affirmed the dismissal of the former—but not the latter—claims as expressly preempted.  *See id.* at 950.[11]  The *Chae* Court held that plaintiffs' claims were expressly preempted only to the extent they challenged HEA-authorized language in Sallie Mae's billing statements.  *Id.* at 943.  In so ruling, the Ninth Circuit reasoned that "[a] properly-disclosed FFELP practice cannot . . . be misleading under state law."  *Id.*  With respect to plaintiffs' remaining claims, however, the *Chae* Court held that those based on "breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and the use of ***fraudulent and deceptive practices apart from the billing statements . . . are not impacted by any of the FFELP's express preemption provisions***."  *Id.*

This distinction was explained in *Genna v. Sallie Mae, Inc.*, No. 11-cv-7371, 2012 WL 1339482 (S.D.N.Y. Apr. 17, 2012).  There, the plaintiff alleged that Sallie Mae misrepresented, through email and phone conversations, that it was granting him a forbearance and enrolling him in auto-debit payments.  *Id.* at *1-2. In denying Sallie Mae's motion to dismiss, the *Genna* court held, under facts

---

[11] The *Chae* Court also affirmed the dismissal of plaintiffs' latter claims, but did so based upon conflict preemption, *see id.* at 950—which Defendants do not raise here, MTD 10-13.

analogous to those herein, that the statements at issue (which did not involve billing statements) "were neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law." *Id.* at *8.

Likewise, Plaintiffs here do not seek to force disclosures beyond those mandated by the HEA or police the accuracy of those already required. Rather, Plaintiffs' claims focus on conduct that is neither regulated nor sanctioned by the HEA, and federal law provides no shield to state-law claims challenging such conduct.[12]

### C.   Plaintiffs Have Enforceable Consumer Protection Claims

#### 1.   The FAC Adequately Alleges Claims Under The DCFA

Defendants first argue, incorrectly, that the FAC fails to satisfy the plain terms of the DCFA because there is no allegation "that any Defendant sold, leased or advertised any merchandise to any Plaintiff." MTD 13-14. This argument fails because the provision of services, such as "loan servicing," is within the meaning of the term "merchandise" as DCFA defines that term because "services" are explicitly referenced. *See* 6 Del. C. § 2511(6) ("merchandise" includes "**any**

---

[12] Defendants' passing citation to other cases proves equally unavailing. MTD at 21-22. The claims brought in *McCulloch* were, unlike here, based on violations of the HEA. *See McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1219 (11th Cir. 2002). Further, the decision in *United States v. Gorski*, No. 11-4252, 2012 WL 12886823, (C.D. Cal. Mar. 22, 2012), provides no support for Defendants. That case merely cited to *Chae*, with no additional analysis, and thus offers nothing more than *Chae*, which is addressed above. *Id.* at *7.

objects, wares, goods, commodities, intangibles, real estate or ***services***"). Thus,

courts addressing DCFA have explicitly applied it to "services." *See Harnish v.*

*Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 653 (D.N.J. 2013) (court denied

defendant's motion to dismiss DCFA claims arising from law school's alleged

publication of misleading statistics about its graduates' employment); *Yarger v.*

*ING Bank*, *FSB*, 285 F.R.D. 308 (D. Del. 2012) (certifying class of borrowers who

alleged mortgage lender violated DCFA through deceptive advertising campaign

concerning its mortgage loans).[13]

Defendants next claim that their deceptive practices are not covered under

the DCFA because those services took place "after the loan funds were

distributed." MTD 14. Again, they are wrong because the DCFA encompasses

any deceptive practices "in connection" with a sale or advertisement. A necessary

part of obtaining a loan is repaying it. Defendants recognize this point in touting,

albeit falsely, their willingness to provide borrowers guidance in finding long-term

repayment solutions. ¶81. Accordingly, the deception and misrepresentations

---

[13] Defendants' reliance on *Worldspan, L.P. v. Ultimate Living Grp., LLC*, 390 F. Supp. 2d 412 (D. Del. 2005) is misplaced. *Worldspan* alleged a violation of Delaware's Deceptive Trade Practices Act. In *dicta*, the court opined that plaintiff could more appropriately bring a claim under the DCFA because that statute provides remedies for violations of the "vertical" relationship between a consumer and seller of services. The court ***did not*** opine on what is contemplated by "seller of services." *Id.* at 414-415.

complained of in the FAC were clearly made in connection with the distribution of loans because they concerned the repayment of the loans.[14]

Defendants next argue that the FAC does not have sufficient specificity to meet the requirements of Rule 9(b), which they argue is the proper pleading standard.  MTD 14.  As an initial matter, whether Plaintiffs' DCFA claims are subject to Rule 9(b) is an open question.[15]  Nonetheless, even if Rule 9(b) does apply, its purpose "is to provide defendants with notice of the precise nature of the claim against them, not to test the factual allegations of the claim."  *Gerbitz v. ING Bank, FSB*, 967 F. Supp. 2d 1072, 1076 (D. Del. 2013) (citing *Seville Indus. Mach. Corp. v. Southmost Mach Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).  Accordingly, in *Gerbitz*, where the plaintiff alleged defendants' violation of DCFA in marketing loans, the court noted that "date, place, and time allegations . . . are not required to satisfy Rule 9(b), so long as the circumstances of the alleged fraud are pled

---

[14] Defendants' reliance on *Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066 (Del. Super. Ct. 1989) is misplaced.  There, the court found that, unlike in the instant matter, "post-sale representations" were "not connected to the sale or advertisement of the vehicle."  *Id.* at 1074.

[15] In *Sammons v. Hartford Underwriters Ins. Co.*, C.A. No. S09C-12-026, 2010 WL 1267222, at *3 (Del. Super. Ct. Apr. 1, 2010), the court noted that the Delaware Supreme Court in *Stephenson v. Capano*, 462 A.2d 1069 (Del. 1983) "drew certain distinctions between common law fraud and an action under the DCFA, but has not been asked to rule on the question of the appropriate pleading standard."  In *Kerr v. American Independent Ins. Co.*, C.A. No. 06C-06-012, 2007 WL 642072 (Del. Super. Ct. Feb. 28, 2007), the court ruled on a motion to dismiss a DCFA action applying Rule 8.

sufficiently to place the defendants on notice of the precise misconduct with which they are charged . . . ." *Id.*

Given, among other things, the specific allegations of the FAC citing statements on Defendants' website (¶¶81-82), statements made by Jack Remondi (¶¶83-84), and related regulatory actions filed against Defendants (and referenced in the FAC), the Court should find that Defendants were given "sufficient notice as to the misconduct with which [they are] charged." *See Gerbitz*, 967 F. Supp. 2d at 1078.

Finally, Defendants incorrectly argue that DCFA claims can only be brought in a Delaware Court.  MTD 15.  On the contrary, Section 2525 only provides that an action ***may*** be brought in a competent jurisdiction in Delaware.  *See* 6 Del. C. § 2525.  It does not prohibit other courts from asserting jurisdiction over Delaware statutes.  *See Indianapolis Life Ins. Co. v. Hentz*, No. 06-cv-2152, 2008 WL 4453223 (M.D. Pa. Sept. 30, 2008) (asserting jurisdiction of DCFA claims pursuant to 28 U.S.C. § 1332 in action alleging state law claims).[16]

### 2.      The FAC Adequately Alleges Claims Under The NYGBL

Defendants argue Plaintiff Todd and the New York Sub-Class are not entitled to relief under Section 349 of the NYGBL "because communications with

---

[16]  To the extent *Schwartz v. Lights of Am.*, No. 11-cv-1712, 2012 WL 4497398 (C.D. Cal. Aug. 31, 2012), cited by Defendants, purports to state to the contrary, it misreads 6 Del. C. § 2525.

borrowers are the subject of regulations issued by the ED and the Amended Complaint does not allege any violation of these regulations."   MTD 17.[17]

Defendants appear to be arguing that they are entitled to a safe harbor defense under § 349(d), which provides a "complete defense" whenever a challenged act or practice complies with federal rules and regulations.   However, Defendants' contention fails because the safe harbor provision "require[s] Defendant to identify a 'rule' or 'regulation' with which it has complied," and they simply have not done so.   *Greene v. Gerber Prods. Co.*, No. 16-cv-1153, 2017 WL 3327583, at *21 (E.D.N.Y. Aug. 2, 2017).[18]   Nor can they, since no HEA rule or regulation countenances the type of "steering" alleged in the FAC.

Defendants next argue that "Ms. Todd cannot bring a claim under § 349 for alleged abusive practices in connection with collection of her loans because there is no private right of action for such conduct."   MTD 17.   That argument misses

---

[17] Defendants incorrectly contend that Rule 9(b) applies to § 349 claims.   MTD 16. But, one of the very cases they cite—*Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512 (S.D.N.Y. 2003)—was reversed by the Second Circuit Court of Appeals on this exact issue, holding:   "**an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)**, Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."   *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

[18] Further, Defendants' suggestion of "inconsistencies" in Plaintiff Todd's pleading, MTD 17 n.8, is equally baseless.   That Plaintiff Todd managed to **enroll herself in IDR without any information from Defendants** only affirms her claims—that she was eligible for lower monthly payments, but Defendants instead steered into multiple costly forbearances simply because it was easier for them to do so.   ¶108.   Had Plaintiff Todd been apprised of her repayment options sooner, she could have reaped the benefits of IDR much earlier.   *Id.*

the mark, however, as case law makes clear that loan servicing (which is the focus of the FAC) and debt collection are distinct activities.[19]  *See, e.g.*, *Genna*, 2012 WL 2012 WL 1339482, at *9 (rejecting preemption argument noting debt collection and loan servicing "are separate activities").  Given this, it cannot be said that Plaintiffs, by challenging Defendants' loan servicing, are attempting to circumvent the NY debt collection statute's lack of a private right of action by suing under § 349.

Defendants similarly argue that Plaintiff Todd's § 349 claim functions as an end-run to the lack of a private cause of action in the HEA.  MTD at 17.  That argument also fails since, as explained above, Plaintiffs do not bring claims to enforce provisions of the HEA, nor do they seek to tack on additional disclosure requirements beyond those mandated by the HEA.  *See, supra*, 10-14.

In a last-ditch effort at dismissal, Defendants argue that Plaintiff Todd fails to "allege facts which plausibly suggest that she was misled in any material way as required to state a claim under § 349."  MTD 18.  Defendants are wrong since the Second Circuit has specifically stated that justifiable reliance is not an element of a claim under Section 349.  *See, e.g.*, *Pelman*, 396 F.3d at 511 ("a private action brought under § 349 does not require proof of actual reliance"); *see also Stutman v.*

---

[19] While there is a specific statute in New York relating to "debt collection," that statute has no bearing on allegations concerning Defendants' improper steering.

*Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. Ct. App. 2000) ("as we have repeatedly stated, reliance is not an element of a section 349 claim").

### 3.     The FAC Adequately Alleges Claims Under The CLRA And UCL

#### (i)     The FAC Properly Pleads A CLRA Claim

Defendants first argue that the CLRA is narrow in scope and does not apply to "services" such as those at issue here.   MTD 19.   That argument fails; the services performed by Defendants fit within the definition of "services" under the CLRA because they were performed for "work, labor, and services for other than a commercial or business use."  Cal. Civ. Code § 1761(b).  *See also* § 1760 (statute "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices . . . .").  In fact, the CLRA has been specifically applied to claims concerning student loans. *See Russ v. Apollo Grp., Inc.*, No. 09-cv-904, 2009 WL 10674112, at *1 (C.D. Cal. Sept. 23, 2009) (where students alleged failure of university to provide meaningful notice of terms of student loan repayment, the court found "insufficient grounds" to rule that "education is not a service under the plain language of the CLRA, and/or that the legislative history of the CLRA shows that education is not a service.").[20]

---

[20]   *Fairbanks v. Superior Court*, 205 P.3d 201 (Cal. 2009) is not to the contrary.  It held that an insurer that sold life insurance along with ancillary services was not

Defendants then argue that claims under Cal. Civ. Code § 1770(a)(7) fail because the FAC does not plausibly allege that Defendant misrepresented the quality of its services. *See* MTD 20. That argument is flawed since the FAC clearly alleges that Defendants represented that they provided one kind of service (loan servicing that looked out for the best interests of the borrower) when in fact they offered quite the opposite. ¶177. On its face, these facts satisfy Cal. Civ. Code § 1770(a)(7).[21]

Defendants finally argue that Plaintiff Force did not suffer an injury because parent Direct PLUS Loan borrowers are ineligible for IDR. MTD 20-21. This argument should be rejected because, as alleged in the FAC, "parent borrowers may consolidate their Direct PLUS Loans or Federal PLUS Loans into a Direct

---

covered by the CLRA because insurance is not a tangible chattel as defined under the CLRA. *Id.* at 282. The decisions Defendants cite (MTD 19) have extended this reasoning to mortgage services because mortgages, like insurance, is not a tangible chattel. *See, e.g., Mazonas v. Nationstar Mortg. LLC*, No. 16-cv-660, 2016 WL 2344196, at *4 (N.D. Cal. May 4, 2016). However, *Fairbanks* and the cases relying on it, "neither expressly addressed nor analyzed the phrase 'services for other than a commercial or business use.'" *Anderson v. SeaWorld Parks & Entm't, Inc.*, No. 15-cv-2172, 2016 WL 8929295, at *11 (N.D. Cal. Nov. 7, 2016). In *Anderson*, the court analyzed the CLRA's legislative history and "conclude[d] that the term 'services' encompasses the 'educational and entertainment services' Nelson alleges she purchased from SeaWorld."). *Id.* at *12. Similarly, here, student loans concern educational services and fall under the ambit of "services" as defined under the CLRA. Importantly, the California Supreme Court has not applied the *Fairbanks* reasoning to student loan servicers.

[21] *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176 (N.D. Cal. 2016), cited by Defendants, does not require a plaintiff to track the exact words found in Cal. Civ. Code § 1770(a)(7). The court only found that, unlike here, plaintiff did not allege that "the cables themselves do not meet, *e.g.*, a particular quality." *Id.* at 1182.

Consolidation Loan and then repay the new consolidation loan under the [Income Contingent Repayment Plan] . . . ."   ¶30.   Because Defendants failed to communicate this information to Plaintiff Force (¶112), the FAC sufficiently states an injury resulting from Defendants' misconduct.[22]

### (ii)   The FAC Properly Pleads A UCL Claim

The UCL establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, **or** fraudulent.   Cal. Bus. & Prof. Code § 17200. Here, Defendants violated all three prongs (although only one is required).

The "unlawful" prong "borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL."   *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (Cal. Ct. App. 2012).   Defendants argue that Plaintiffs cannot point to "any federal or state law" that makes illegal the conduct alleged in the FAC.   They are wrong.   "[V]irtually any law or regulation—federal or state,

---

[22] Defendants also seek dismissal of Count IV based on a purported violation of CLRA § 1780(d), which requires a plaintiff to file an affidavit attesting that the action was filed in the proper forum.   MTD 21 n.9.   Federal courts in Pennsylvania have determined, however, that "California's venue affidavit requirement is a procedural rule under *Erie* and as such, the Plaintiff in this case is not required to follow it."   *Evans v. Linden Research, Inc.*, 763 F. Supp. 2d 735, 737 n.1 (E.D. Pa. 2011).   Similarly, Defendants offer no authority for the proposition that the timing of Plaintiff Force's notice pursuant to CLRA § 1782(a) requires dismissal of her claims.   To the contrary, because in the almost two months since Plaintiff Force gave Defendant notice of her claim for injunctive relief "there is no sign that Defendant has attempted to remedy the alleged violations since then," the Court should not dismiss the CLRA claims.   *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1106-1107 (S.D. Cal. 2015).

statutory or common law—can serve as [a] predicate for a . . . [section] 17200 unlawful violation." *Klein*, 202 Cal. App. 4th at 1383.  The FAC alleges violations of several state laws, including the CLRA, which in and of itself "may form the predicate unlawful act for the purposes of a UCL claim." *Id.*

The FAC also satisfies the "unfair" prong.  "A business practice violates the unfair prong of the UCL if it is contrary to established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Plumlee v. Pfizer, Inc.*, No. 13-cv-0414, 2014 WL 4275519, at *5 (N.D. Cal. Aug. 29, 2014).  Here, the FAC's allegations clearly describe a pattern of immoral, unethical, and unscrupulous behavior by Defendants in steering borrowers from more beneficial to less beneficial repayment options solely to reduce Defendants' costs and increase profits.[23]  As argued above, Defendants' underlying contention that Plaintiff Force was ineligible for an IDR plan is undermined by facts alleged in the FAC demonstrating the contrary.

Lastly, "[t]o state a claim under the UCL's 'fraudulent' prong, plaintiffs must plead that a defendant's allegedly fraudulent business practice is one in which members of the public are likely to be deceived." *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 1000 (N.D. Cal. 2013); *see also Morgan v. AT&T Wireless Servs., Inc.*, 99 Cal. Rptr. 3d 768, 785 (Cal. Ct. App. 2009).  As described herein and in

---

[23] Defendants' claim (MTD 22) that their conduct was not unfair because Plaintiff Force was not eligible for IDR is fully refuted above.  *See, supra*, 22.

the FAC, Defendants' actions were, among other things, designed to mislead borrowers.[24]

Defendants also argue that the FAC fails to state a claim for restitution under the UCL because it does not allege Defendants obtained any overpayment. MTD 23-24. Defendants are mistaken. The crux of the claim against Defendants is that they "engaged in the unfair, unlawful, and fraudulent business practices" in order to "reduce costs, and thus, *increase* profits." ¶194. That means the additional money Plaintiff Force paid went into Defendants' coffers. It is this additional money that Plaintiff Force and the rest of the California Sub-Class demand as restitution.[25]

### 4.   The FAC Adequately Alleges Claims Under The FDUTPA

The entirety of Defendants' argument regarding the FAC's well-pled FDUTPA claim is premised on the notion that "loan servicing is not trade or

---

[24] As the *Morgan* court further noted, there is a "distinction between common law fraud, which requires allegations of actual falsity and reasonable reliance pleaded with specificity, and the fraudulent prong of the UCL, which does not." *Id.* at 785.

[25] "Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Pom Wonderful LLC v. Welch Foods, Inc.*, No. 09-cv-567, 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009); *see also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 986 (N.D. Cal. 2016) ("[b]ecause Plaintiffs seek to 'recover profits unfairly obtained,' Plaintiffs have sufficiently established that they may seek restitution in the instant action.").

commerce under the FDUTPA." MTD 25. Defendants, however, misconstrue the law.

FDUTPA defines "trade or commerce" as the "advertising, soliciting, providing, offering, or distributing . . . any good or service, or any property . . . or any other article, commodity, or thing of value, wherever situated." *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 161 F. Supp. 3d 1209, 1218 (S.D. Fla. 2015), *adhered to on reconsideration*, No. 12-cv-80372, 2015 WL 10857441 (S.D. Fla. Nov. 9, 2015) (citing Fla. Stat. § 501.203(8)). The *Martorella* action is instructive. In that case, the court found that the FDUTPA claims against a mortgage lender and servicer fell squarely within the FDUTPA's broad definition of "trade and commerce" where the plaintiff alleged that the lenders/servicers charged excessive and/or unreasonable amounts for insurance or other remunerations. *Id.* at 1224. The court reasoned that ***"[i]t is worth noting that one of the stated purposes of the FDUTPA is '[t]o protect the consuming public* . . ."** and "***[t]o effectuate this goal, courts have been instructed to liberally construe the provisions of the statute.***" *Id.* at 1220.

As alleged in the FAC, Defendants knowingly concealed, suppressed, or omitted material facts regarding the availability of IDR for Plaintiff Miller. ¶202. Indeed, the FAC specifically alleges that Defendants actively suppressed the fact that IDR, rather than forbearance, was an available repayment solution for

borrowers experiencing long-term financial hardship. *Id.* Thus, as in the *Martorella* case, Defendants' acts of steering Plaintiff Miller and the Florida Sub-Class into more costly repayment plans are sufficient to satisfy the trade and commerce element of the FDUTPA. *See also Bank of America, N.A. v. Zaskey*, No. 15-cv-81325, 2016 WL 2897410, at *11 (S.D. Fla. May 18, 2016) (refusing to dismiss FDUTPA claim premised on activity beyond debt collection which forced the plaintiffs to expend additional and unnecessary sums of money).[26]

### D.   ED Is Not Necessary Or Indispensable To This Lawsuit

Defendants argue that ED is a necessary and indispensable party to the case and failure to join ED requires dismissal. MTD 26-29. They are wrong.

As an initial matter, under Rule 19(a)(1)(B), it is the absent party—not Defendants—that must claim an interest in the subject matter of the action. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (ruling that

---

[26] The cases Defendants offer for the proposition that the "trade and commerce" requirement is often not met in cases dealing with borrowers alleging FDUTPA violations against mortgage servicers (MTD 25-26) are not to the contrary. Those cases are distinguishable on the simple fact that they only involved the act of collecting the debt accrued on mortgage loans in which the defendants had obtained an interest, not the affirmative actions of steering borrowers into more expensive repayment plans and/or actively concealing information regarding lower cost options such as involved here. For example, the court in *Trent* reasoned that the defendant company "did not advertise, solicit, provide, offer, or distribute anything," and thus did not engage in "trade or commerce." *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 n.12 (M.D. Fla. 2007). Defendants' actions/inactions here thus go far beyond the "narrow debt collection allegations" in Defendants' proffered authorities, rendering them inapposite.

defendant's efforts to assert an interest of a third party "falls outside the language of the rule" as "[i]t is the absent party that must claim an interest"); *United States v. Payment Processing Ctr., LLC*, No. 06-cv-0725, 2006 WL 2990392, at *4 (E.D. Pa. Oct. 18, 2006) (finding that joinder is not required where there "has been no showing that the absent telemarketers have claimed an interest relating to the subject of the action"); *Anchorage v. Integrated Concepts & Research Corp.*, 1 F. Supp. 3d 1001, 1015 (D. Alaska 2014) (rejecting attempt to join government agency as a required party in matter involving government contract because the agency "which [was] aware of th[e] litigation, has not claimed an interest in the litigation."). Since ED has filed no statement of interest in this case or any private or regulatory actions proceeding in parallel, there is no basis for Defendants' argument.

Further, while some courts have held a presumption that an absent party to a challenged contract should be joined, MTD 27-28, others have noted the inapplicability of such a rule where litigants are not "seeking to decimate that contract." *See, e.g.*, *Anchorage*, 1 F. Supp. 3d at 1016; *see also* 25 FED. PROC., L. ED. § 59:131 ("co-obligors generally are not indispensable parties in contract disputes that do not involve reformation, cancellation, rescission, or otherwise challenge the validity of the contract."). This exception applies here: even if it can

be said that ED has an interest in this matter, ED still cannot be deemed a "necessary" party because Plaintiffs do "not seek to set aside" their MPNs.

Likewise, there is no risk of any "inconsistent judgment" against Defendants. Rule 19 "protects a party against situations in which two court orders may be entered and compliance with one might breach the other." *In re Covenant Partners, L.P.*, 531 B.R. 84, 102 (Bankr. E.D. Pa. 2015). "Where two suits arising from the same incident involve different causes of action, defendants are generally not faced with the potential for double liability because separate suits have different consequences and different measures of damages." *Id.* Here, while Defendants claim that a decision in this case could somehow expose them to "inconsistent obligations to ED," they suggest no obligation to ED that would require them to engage in the type of improper steering alleged herein. *See* MTD 28-29. So there simply is no basis for their claim.

Finally, even if an absent party is ruled "necessary" to a dispute, dismissal is only warranted under Rule 19 where that party is indispensable and joinder is infeasible. Fed. R. Civ. P. 19(b). Here, however, Defendants make no argument on these points. MTD 26-29.

### E.     Navient Corporation Is A Proper Defendant

Defendants claim that all of the servicing obligations of the Navient companies were carried out by NSI/NSL[27] and that their parent corporation—Navient Corp.—is not a proper Defendant because it committed no wrongful acts. MTD 29-30.  They further allege that Plaintiffs have not pled sufficient facts to "pierce the corporate veil" and thus allow Navient Corp. to remain as a Defendant in this action.  MTD 30-31.  Defendants' arguments are factually and legally flawed.

First, the FAC clearly states that, pursuant to the terms of the split-up of SLM Corp. and the formation of Navient Corp., "Navient Corp. assumed responsibility for liabilities resulting from the pre-reorganization conduct of old SLM Corporation and its subsidiaries related to servicing student loans.  Navient Corp. is therefore included in the FAC for servicing misconduct occurring prior to 2014, as a successor to SLM Corporation."  ¶41.  Defendants offer no rebuttal to

---

[27] Defendants allege that NSI should be dismissed because the FAC alleges that NSL is a "successor" to NSI.  *See* MTD 29.  That allegation, however, does not mean that Plaintiffs have acknowledged that any claim they have against NSI is subsumed by their claims against NSL.  They have not, because they do not have access to the facts regarding the formation of NSL and the liabilities it assumed upon its formation.  If the Defendants were to acknowledge that NSL is fully responsible for all of the liabilities of NSI, and that all relevant personnel and documents of NSI were now at NSL—neither of which they have done as of yet—Plaintiffs would dismiss NSI as a party defendant.

this factual assertion, and thus, on these grounds alone, their motion to dismiss Navient Corp. as a defendant should be denied.

Second, there is a well-established line of cases that set forth an agency theory of liability, pursuant to which a parent corporation can be liable for the actions of its subsidiary if the subsidiary acts on behalf of the parent and the arrangement is relevant to the claim. *See Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988) ("when customary agency is alleged the proponent must demonstrate a relationship between the corporations and the cause of action"); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc. (DE)*, C.A. No. 16-581, 2017 WL 896988 at *6 (D. Del. Mar. 7, 2017) ("[u]nder agency theory, a parent corporation is held liable for the actions of its subsidiary if the parent directed or authorized those actions").

Here, Navient Corp., as the successor to SLM Corp., was a party to the Servicing Contract with ED to service federal student loans. Navient Corp. subsidiaries NSI/NSL were responsible to Navient Corp. for carrying out the servicing obligations on behalf of Navient Corp.[28] These activities by NSI/NSL are directly related to the Plaintiffs' claims that Defendants breached their serving obligations to Plaintiffs and the proposed classes. Since the facts alleged clearly

---

[28] Further, evidence of agency required at the pleading stage is minimal. *In re Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("[P]laintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs [at the pleading stage].").

establish that (i) Navient Corp. was the contracting party, (ii) it authorized its subsidiaries NSI/NSL to perform services pursuant to that agreement, and (iii) the failure to perform those services is at the heart of the contractual and statutory claims alleged here, under the agency theory of liability Navient Corp. is a proper party to this case.

Third, even under the alter ego theory of liability specifically addressed by Defendants (MTD 29-31), there are sufficient facts alleged to establish the liability of Navient Corp.  To establish alter ego liability, courts look at "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001).  Here this test is met because Navient Corp.: (1) shares officers and directors with its subsidiaries; (2) owns or leases the offices and controls and directs the hiring of employees for its subsidiaries; (3) holds itself out as a loan servicing company and claims that it services loans for 6.3 million customers whose accounts are serviced under Navient [Corporation]'s contract with ED; and (4) often makes no meaningful distinction between it and its subsidiaries.  *See, supra*, 4.  These allegations are sufficient to establish that

Navient Corp. is the "alter ego" of NSI/NSL.  Thus, there is no basis at pleading stage to dismiss Navient Corp. as a defendant.

## IV.   CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.

Dated:  October 20, 2017

*/s/  Robert D. Schaub*
Robert D. Schaub (PA 42466)
**Rosenn Jenkins &**
   **Greenwald, LLP**
15 South Franklin St.
Wilkes-Barre, PA 18711
Tel:  (570) 826-5600
Fax:  (570) 826-5640
Email: rschaub@rjglaw.com

*Liaison Counsel for Plaintiffs*
*and the Classes*

*/s/ Geoffrey C. Jarvis*
Joseph H. Meltzer (PA 80136)
Geoffrey C. Jarvis (PA 75473)
Zachary Arbitman (PA 314274)
**Kessler Topaz**
   **Meltzer & Check, LLP**
280 King of Prussia Road
Radnor, PA  19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056
Email: jmeltzer@ktmc.com
Email: gjarvis@ktmc.com
Email: zarbitman@ktmc.com

*Lead Counsel for Plaintiffs*
*and the Classes*

## CERTIFICATE OF COMPLIANCE
## <u>WITH LOCAL RULE 7.8(b)(3)</u>

I, Geoffrey C. Jarvis, hereby certify that the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss The Amended Complaint is in compliance with Local I Rule 7.8(b)(3) and the July 12, 2017 Order of Court (Doc. No. 19).  The brief contains 8,000 words as computed by Microsoft Office Word.


Date:  October 20, 2017                    */s/ Geoffrey C. Jarvis*
                                           Geoffrey C. Jarvis

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss The Amended Complaint was electronically filed on October 20, 2017, and is available for viewing and downloading from the Court's ECF System.

/s/ *Geoffrey C. Jarvis*
Geoffrey C. Jarvis
